Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) |
| | ) Bankruptcy Case No. |
| ROBERTO ESCATEL OROZCO and | ) 19-60726-pcm13 |
| MELINDA MARIA OROZCO, | ) |
| | ) |
| Debtors. | ) |
| | ) |
| | ) Bankruptcy Case No. |
| In re: | ) 19-61230-pcm13 |
| | ) |
| HECTOR RAMON GARCIA FIGUEROA, | ) |
| | ) OPINION |
| Debtor. | ) |

This matter comes before the court on the trustee's objection to confirmation of debtors' chapter 13[1] plan.[2] The issue is whether chapter 13 debtors must pay any tax refunds received during the plan period to the trustee. I conclude that tax refunds must be accounted for in

---

[1] All references to chapters and sections are to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

[2] The trustee objected to plans in four other chapter 13 cases that raise the same issue. This Opinion will govern the outcome of those cases, and I will not write separately on them.

Page 1 - OPINION

determining projected disposable income. For the reasons below, I further conclude that a debtor's tax refunds must be turned over to the trustee unless they are excluded by a non-standard provision in the plan, or the debtor has met his or her burden of showing that the refunds are otherwise accounted for in calculating projected disposable income.

## JURISDICTION AND VENUE

The court has subject matter jurisdiction over these cases pursuant to 28 U.S.C. § 1334(a). These matters are core proceedings under 28 U.S.C. § 157(b)(2)(A), (E), & (L). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408-09(a).

## BACKGROUND

Chapter 13 allows debtors to restructure their debts and retain non-exempt assets, in exchange for making payments over a certain period of time. Distribution of those payments is made by the chapter 13 trustee in accordance with a chapter 13 plan.

For a chapter 13 plan to be confirmed, it must comply with the Bankruptcy Code. § 1325(a)(1). One of the requirements under the Code is that debtors commit all or a portion of their future earnings or other future income "to the supervision and control of the trustee as is necessary for the execution of the plan[.]" § 1322(a)(1). If there is an objection to confirmation of a plan, debtors must either pay their unsecured creditors in full, or pay all of their "projected disposable income" to unsecured creditors during the applicable commitment period. § 1325(b)(1).

In the District of Oregon, debtors are required to use a local form chapter 13 plan. The local plan requires debtors to pay to the trustee

Page 2 - OPINION

monthly payments, proceeds from avoided transfers, and net tax refunds during the life of the plan.

Paragraph 3(c) of that form plan provides:

> 3. **Payments to the Trustee.** Debtor must pay to the trustee:
>
> (a) a monthly payment of $ \_\_\_\_\_;
>
> (b) all non-exempt proceeds from avoided transfers, including those from transfers avoided by the trustee;
>
> (c) upon receipt, net tax refunds attributable to the following tax years: \_\_\_\_\_ ; net tax refunds are those tax refunds not otherwise provided for in the plan, less tax paid by debtor for a deficiency shown on any tax return for that same tax year or tax paid by setoff by a tax agency for a postpetition tax year.

Debtors in these cases inserted the word "none" in paragraph 3(c).

The trustee objects to confirmation of debtors' plans on the grounds that debtors have failed to provide for payment of all of their projected disposable income, because they have failed to provide for payment of their tax refunds into their plans.

## ANALYSIS

A. <u>Calculation of Disposable Income</u>

The disputes in these cases arise from ambiguities created by amendments to the Bankruptcy Code in the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Among the many changes made to the Code in 2005 was the implementation of a "means test." The means test serves at least two vital functions in bankruptcy cases filed after October 17, 2005.

First, it is used to determine whether a debtor is eligible to file a chapter 7 case. If a debtor's "current monthly income," as defined by the Code, is below the applicable state median family income for a family

Page 3 - OPINION

the size of the debtor's household ("below-median debtor"), the debtor is eligible to file chapter 7. § 707(b)(7). If the current monthly income is above that threshold ("above-median debtor") and, after deducting certain specified expenses, the debtor has net income that exceeds a statutory limit, the chapter 7 filing is presumed to be an abuse of the Bankruptcy Code, because the debtor's income and expenses allow the debtor to make some payment to unsecured creditors. See § 707(b)(2). The debtor can convert the case to one under chapter 11 or chapter 13, or attempt to rebut the presumption of abuse to stay in chapter 7. §§ 707(b)(1); 707(b)(2)(B).

Second, and relevant to this decision, the means test is imported into Chapter 13. See § 1325(b)(2), (3). Before BAPCPA, the amount available to pay to the trustee in a chapter 13 plan (the debtor's disposable income) was determined by the debtor's Schedule I (Income) and Schedule J (Expenses). The last line of Schedule J deducts the debtor's Schedule J expenses from the Schedule I net income and arrives at a monthly net income. That monthly net income formed the basis for how much the debtor's monthly plan payment would be.

BAPCPA and the creation of the means test changed the equation. Congress imported the definition of current monthly income from the means test for two purposes in chapter 13. First, current monthly income determines how long a chapter 13 debtor's plan must last. For a below-median debtor, a chapter 13 plan must last a minimum of three years, the "applicable commitment period." § 1322(d)(2). For an above-median debtor, a chapter 13 plan must last five years, or until all allowed claims are paid in full. § 1322(d)(1).

Page 4 - OPINION

Second, BAPCPA uses "current monthly income" as the starting point for determining disposable income in a chapter 13 case. Current monthly income is defined as the average monthly income from all sources (with a few listed exceptions such as Social Security) received by the debtor in the six months before bankruptcy. § 101(10A). Debtors report current monthly income on Official Form 122C-1.

Disposable income, in turn, is defined as current monthly income "less amounts reasonably necessary to be expended" for the maintenance or support of the debtor or the debtor's dependents. § 1325(b)(2). For above-median debtors, Congress went further and dictated that reasonably necessary expense amounts deducted from current monthly income to arrive at disposable income be calculated using the expenses set out in the means test, using Official Form 122C-2. See § 1325(b)(3). These expenses are based in large part on standardized Internal Revenue Service amounts, plus certain other specified expenses. § 707(b)(2)(A). The end result of deducting these specified expenses from current monthly income is the debtor's disposable monthly income, which lays the foundation for the debtor's monthly plan payment and the amount that must be paid to unsecured creditors.

For below-median debtors, the Code does not provide any guidance as to the calculation or definition of "amounts reasonably necessary to be expended," which are deducted from current monthly income to determine disposable income. This creates uncertainty as to how disposable income is calculated for below-median debtors. Debtors and the trustee disagree on the proper method to determine amounts reasonably necessary to be expended in a below-median case.

Page 5 - OPINION

Debtors argue that calculation of disposable income for below-median debtors is the same as the calculation used for above-median debtors. In other words, they argue that they can calculate their disposable income, and therefore their projected disposable income, by using the current monthly income shown on Form 122C-1, and calculate their expenses using Form 122C-2, which applies the IRS standards and other specified expenses to determine a debtor's reasonably necessary expenses. They base their argument on the language contained in § 1325(b)(2).

Debtors are correct that the statutory language is the same for both above- and below-median debtors, to a point. The statute simply states that a debtor determines disposable income by deducting amounts reasonably necessary to be expended "for the maintenance or support of the debtor or a dependent of the debtor[.]" § 1325(b)(2). This paragraph of § 1325(b) does not distinguish between above- and below-median debtors. However, that is where the symmetry ends. The next paragraph, section 1325(b)(3), does make that distinction. It specifically instructs above-median debtors to follow the means test formula to calculate the "[a]mounts reasonably necessary to be expended under paragraph (2)[.]" This is done by using Official Form 122C-2. In contrast, the Code does not direct below-median debtors to use the means test to calculate reasonably necessary expenses.

Debtors argue that this statutory distinction should be ignored and the amount deducted from current monthly income for a below-median debtor's expenses should be the same standardized approach as for above-median debtors, namely the mechanical approach taken using Form 122C-2. The trustee argues that the means test is not relevant to calculating the

Page 6 - OPINION

amount of expenses used in determining disposable monthly income for below-median debtors.

I agree with the trustee. Congress's silence with respect to how below-median debtors must determine their reasonably necessary expenses is deafening. See Hamilton v. Lanning, 560 U.S. 506, 517 (2010) (the Court does not read the Code as changing pre-BAPCPA practice absent a clear indication of that intent). The plain reading of the statute supports the trustee's argument. Congress, for whatever reason, chose to approach the calculation of disposable income for above-median debtors with a somewhat mechanical approach, applying IRS standards for many of the debtor's expenses. Similarly, Congress chose to leave below-median debtors out of this mechanical, somewhat artificial approach to determining expenses. Rather, as before the enactment of BAPCPA, the statute instructs debtors to deduct amounts reasonably necessary to be expended for maintenance and support. The Supreme Court in Lanning, 560 U.S. at 510, recognized that, for below-median debtors, Congress provided that they could include "the full amount needed for 'maintenance or support[.]'" For above-median debtors, however, Congress provided that they could include "only certain specified expenses." Id.[3] In other words, the expenses are not standardized or artificial for below-median debtors; the deductions must be *reasonably necessary* and *expended*. The

---

[3] The Supreme Court in Lanning seemed to think that the standardized expenses used by above-median debtors are more limiting than a below-median debtor's "full amount" needed for support. 560 U.S. at 510. As debtors have ably demonstrated here, and as this court's experience has shown, the standardized expenses allowed under the means test for above-median debtors often far exceed the reasonable and necessary expenses that a below-median debtor can claim.

Page 7 - OPINION

best indication of expenses that are reasonably necessary and anticipated to be expended is Schedule J.

Debtors' argument that the court should not distinguish between above- and below-median debtors as to how deductions from current monthly income are calculated is pivotal to their position that below-median debtors need not turn over their tax refunds. They postulate that, if the formula for determining the deductions from current monthly income used for above-median debtors set out in Form 122C-2 were used for below-median debtors, the end result of calculating the debtor's disposable income would be a negative number, even with the addition of anticipated tax refunds. Debtors then argue that, because disposable income will virtually always be negative, there is no obligation to turn over the refunds.

Debtors are probably correct about the impact of using the means test to calculate expenses. Unless a debtor is close to having above-median income, the addition of tax refunds will not create a positive disposable income if a below-median debtor were to use the formulas contained in Form 122C-2. The reason for this is that most low-income debtors live on budgets well below the IRS standards. They also tend to have less in secured debt payments than do above-median debtors. Thus, their expenses shown on Schedule J are lower than they would be under the means test calculation set out in Form 122C-2. The end result is that below-median debtors may, in fact, show a positive number for disposable income when an above-median debtor would likely have a negative disposable income number, despite having a higher income. I acknowledge the inherent inequity in this distinction, but the result is mandated by

Page 8 - OPINION

the language of the Code, which I am not at liberty to ignore.

B. <u>Calculation of Projected Disposable Income</u>

Projected disposable income starts with disposable income, determined by taking current monthly income and reducing it by the debtor's reasonably necessary expenses. Disposable income is then projected over the life of the plan.

The question then is how to project disposable income looking forward during the plan period. Although the Code does not define "projected" disposable income, the Supreme Court in <u>Lanning</u>, 560 U.S. 505, provided guidance as to the interplay between disposable income and projected disposable income, confirming that there is a difference between the two. <u>Lanning</u> involved an above-median debtor. The Court rejected a mechanical approach to projecting disposable income. It said that, under the forward-looking approach to projecting disposable income, the calculation of disposable income is generally the end of the analysis. Because projected disposable income is forward-looking, that number can vary from disposable income if there are differences in income or expenses that are known or virtually certain to occur in the future during the period of the plan. <u>Id.</u> at 524.

<u>Lanning's</u> rejection of a purely mechanical approach to determining projected disposable monthly income makes sense. Because the calculation of disposable monthly income is based on an historical calculation of income, it may not comport with reality. For example, if a debtor becomes employed or gets new employment at a substantially higher income level just before the bankruptcy is filed, the current monthly income shown on Form 122C-1 may be lower than it is known or virtually certain

Page 9 - OPINION

to be going forward.  Similarly, the debtor may have received unusual or non-recurring income during the six-month look-back period, such as a bonus during the six-month period preceding the filing.  In that instance, the current monthly income may too high and result in a plan payment that is not sustainable.

Therefore, projected disposable income is the debtor's current monthly income, minus anticipated tax liabilities and other reasonably necessary amounts to be expended for maintenance and support (whether calculated by above-median debtors using the means test or by below-median debtors not using the means test), with any adjustments as necessary based on known or virtually certain deviations with respect to income or expenses.

C. <u>Tax Refunds as Income</u>

For all debtors, the income portion of disposable monthly income is the current monthly income shown on their Official Form 122C-1, which requires the debtor to include his or her income from all sources received over the previous six months to calculate an average monthly income.[4]  Although there are certain exclusions from the "all sources" definition, tax refunds are not one of those exclusions.  See <u>Marshall v. Blake</u>, 885 F.3d 1065 (7th Cir. 2018) (<u>overruled on other grounds</u> <u>In re</u>

---

[4] The trustee argues that his practice for below-median debtors "is to use the actual income (per Schedule I), and not the 'current monthly income,' (per Form 122C-1)" in computing the monthly disposable income for the plan payment.  Trustee's Reply Memorandum (Doc. 24) at p.6:14-17.  Although I recognize the practicality of that approach, it is an allowable approach only if it is consistent with starting with the current monthly income as defined by the Bankruptcy Code, adjusted as necessary pursuant to <u>Lanning</u>.

Page 10 - OPINION

Wade, 926 F.3d 447 (7th Cir. 2019); In re Schiffman, 338 B.R. 422 (Bankr. D. Or. 2006) (tax refunds are income).[5]

Tax refunds come from two sources. First, they can result from over-withholding of payroll tax. Second, they can result from tax credits such as the Earned Income Credit (EIC), Child Tax Credit (CTC), or other tax credits that are available to low-income workers and result in tax refunds.[6]

Tax refunds resulting from over-withholding are not additional income; they are a portion of the debtor's gross pay, which has been reported on Form 122C-1. A portion of that gross pay is returned to the debtor who has withheld more in taxes than is actually owed. It does not matter whether the refund is received in the six months before bankruptcy; the gross pay that is reflected on the Form 122C-1 is all that is required in calculating current monthly income.

Refunds that are based on tax credits, on the other hand, are not derived from a debtor's work income, and so do not show up as part of the gross pay on the Form 122C-1. Because they are a source of income that is not excluded from the definition of current monthly income in § 101(10A), they must somehow be included in the calculation of current monthly income, if received in the six months before bankruptcy.

---

[5] I question the public policy behind including tax credits, such as earned income credit, in income. However, the statutory language clearly excludes certain types of income such as social security but fails to exclude tax credits such as earned income credit.

[6] The CTC is not paid out as a tax refund. It is credited against tax liability. Additional Child Tax Credit (ACTC) may result in a tax refund.

Page 11 - OPINION

D.  <u>Treatment of Tax Refunds in Chapter 13 Plans</u>

Tax refunds must be factored into the calculation of projected disposable income, whether a result of tax credits or of over-withholding. If refunds are not included in projected disposable income and the debtor does not provide for payment of the refund into the plan, the court cannot confirm the plan over the trustee's objection.

The question is how tax refunds should be accounted for in calculating a chapter 13 debtor's projected disposable income. The answer depends on whether the tax refunds are a result of over-withholding or are tax credit refunds.

1.  <u>Tax Refunds Resulting from Over-Withholding</u>

A debtor's current monthly income is reported on Form 122C-1. This form asks on Line 2 for a debtor's "gross wages, salary, tips, bonuses, overtime, and commissions (before all payroll deductions)." This amount should reflect the debtor's gross pay before taxes are withheld.

The problem comes in accurately calculating tax liability as an expense to deduct from gross pay in determining disposable income. Form 122C-1 sets out gross pay, which reflects only the income side of disposable income. There is no line item on Form 122C-1 to reduce gross pay by the amount of tax withholding. Because above- and below-median debtors calculate their disposable income differently, I will address the two categories separately.

(a)  <u>Below-median debtors</u>

For below-median debtors, the expenses used to reduce their current monthly income to determine disposable income are generally set out in Schedule J. That schedule, however, does not include a line item for tax

Page 12 - OPINION

withholding.  Payroll deductions, including tax withholding, are reported on Schedule I.

Therefore, in calculating disposable income, below-median debtors must take their current monthly income from Form 122C-1 and reduce it by the tax withholding shown in Schedule I and their other reasonably necessary expenses shown in Schedule J.

The practical issue is that withholding reported on Schedule I can be actual withholding or it can be withholding calculated based on actual tax liability, which are not necessarily the same thing.

If a debtor uses actual tax withholding as an expense to reduce her gross income, and that withholding has in the past and is likely in the future to result in a tax refund because it is more than is needed to pay actual tax liability, reducing gross income by that figure will artificially inflate the reasonably necessary expense deduction and consequently artificially reduce the reported disposable income.  In that case, any tax refund would then be income that has not been included in calculating disposable income, and the debtor would need to provide for payment of tax refunds into the plan.

The correct approach is for a debtor to report tax withholding on Schedule I based on actual anticipated tax liability.  This results in an accurate expense calculation of the debtor's reasonably necessary expenses and accurately determines disposable income for purposes of calculating the amount of a plan payment.  Because the disposable income calculation takes into account actual tax liability, any tax refund based on over-withholding has been accounted for and need not be paid to the trustee during the life of the plan.

Page 13 - OPINION

In summary, a debtor's plan payment should be calculated based on the debtor's best estimate of actual tax liability, reflected in Schedule I. A plan that accurately reflects anticipated tax liability on Schedule I as an expense need not provide for payment to the trustee of tax refunds based on over-withholding, because no such refunds are expected. If the debtor is over-withholding and instead reports on Schedule I actual tax withholding, which is known or virtually certain to result in a tax refund, and then deducts that actual over-withholding in calculating reasonably necessary expenses, the debtor will need to provide for payment of the tax refund into the plan, because the debtor's income has been artificially reduced by over-withholding. Of course, the debtor can always include a non-standard provision allowing her to retain any tax refund, with the consent of the trustee.[7]

    (b)   <u>Above-median debtors</u>

Unlike below-median debtors, who must look to Schedules I and J to calculate their reasonably necessary expenses, above-median debtors use the means test to determine expenses used to calculate their disposable income. Means test expenses are reported using Form 122C-2.

Form 122C-2 expressly includes a line item for taxes. In Line 16 of the form, debtors are instructed to report taxes:

> The total monthly amount that you actually pay for federal, state and local taxes, such as income taxes, self-employment taxes, social security taxes, and Medicare taxes. You may include the monthly amount withheld from your pay for these taxes. <u>However, if you expect to receive a tax refund, you must divide the expected refund by 12 and subtract that number from the total monthly amount that is withheld to pay for taxes</u>. Do not include real estate, sale, or use taxes. (Emphasis supplied.)

---

[7] In fact, the national Chapter 13 Plan form specifically includes a check box to allow debtors to retain tax refunds.

Page 14 - OPINION

This calculation provides the mechanism by which a debtor accounts for the income that is reflected in tax refunds resulting from over-withholding. If a debtor correctly completes this line item, the tax refunds based on over-withholding are accounted for in the plan and need not be paid to the trustee. Of course, if a debtor fails to account for refunds caused by over-withholding, the plan must provide that those refunds be paid into the plan.

2. <u>Tax Refunds Based on Tax Credits</u>

Tax credit refunds are income in addition to income from wages or salary. Form 122C-1 does not include a line specifically for tax credit refunds. Therefore, a debtor must include tax credit refunds that were received within six months before bankruptcy on Form 122C-1 in Line 10, which asks for "[i]ncome from all other sources not listed above." If the refund was not received within the six-month look-back period, it is not required to be included in the Form 122C-1 current monthly income calculation.

If the debtor did not receive a refund within the six-month look-back period, but it is known or virtually certain that the debtor will receive tax credit refunds during the life of the plan, a reasonable estimate of the amount of anticipated tax credit refunds must be included as income on Schedule I and used to project disposable income over the life of the plan. For debtors who did receive their refund within the six months before bankruptcy, the full amount of the refund was pro-rated over six months to calculate current monthly income. Any known or virtually certain future tax credit refunds will need to be pro-rated over the full calendar year. All debtors can make that adjustment on

Page 15 - OPINION

their Schedule I to show that an adjustment to current monthly income is necessary because of future differences that are known or virtually certain to occur.

Realistically, it is unlikely that including the pro-rated amount of the refunds will increase a debtor's plan payment, at least for below-median debtors. Along with the increased net income, the below-median debtor will be able to claim reasonable expenses on Schedule J. The reality is that most of the refunds received by below-median debtors are tax credits such as the EIC. These debtors typically live on very tight budgets, with little or no room for error and well below the IRS standards. It will not be difficult or unreasonable in most cases to show expenses that absorb any additional income listed on Schedule I from tax refunds.

If a debtor accurately reports refunds based on tax credits on Schedule I, she need not provide for payment of those refunds in the plan, because they have already been accounted for in determining projected disposable income.

In summary, debtors have three choices of how to treat tax refunds based on tax credits. First, the correct approach is to include any refunds based on tax credits on Form 122C-1, Line 10, if those refunds were received in the six months before bankruptcy, or on Schedule I if a refund was not received in the six months leading up to bankruptcy but it is known or virtually certain that the debtor will receive tax credit refunds during the life of the plan. If that is done, the debtor need not pay tax credit refunds into the plan.

Second, if the debtor fails to account for those refunds on Form

Page 16 - OPINION

122C-1 or Schedule I, and it is known or virtually certain that the debtor will receive tax credit refunds during the life of the plan, the debtor must provide for payment of the refunds into the plan in order to obtain confirmation over the trustee's objection.

Third, debtors may, with the trustee's agreement, include a non-standard provision that they may retain all or part of the refunds received.[8]

CONCLUSION

If the trustee objects to confirmation of a debtor's chapter 13 plan, the debtor must pay his or her projected disposable income to the trustee for payment to unsecured creditors. Tax credit refunds are included in projected disposable income. Deductions from income for tax withholding must accurately reflect actual tax liability. Absent a showing that refunds have been adequately accounted for in calculating projected disposable income, and in the absence of a plan provision requiring payment of refunds over to the trustee, a plan cannot be confirmed over the trustee's objection.

It is true that debtors may receive tax refunds during the life of their plans that are in excess of projected amounts, whether a result of over-withholding or of tax credits. However, a debtor's obligation under the Code is to commit his or her projected disposable income to the plan. Income may vary, as may expenses. If the projection is reasonable, the fact that actual refunds vary from the amounts projected does not necessarily mean that the refunds must be paid into the plan.

---

[8] The chapter 13 trustee in the Portland Division has a form non-standard provision he allows debtors to include in their plans that allows them to retain EIC refunds without further analysis.

Page 17 - OPINION

Debtors have failed to show that they adequately accounted for their tax refunds, nor have they provided that the refunds will be turned over to the trustee. Therefore, they have failed to meet their burden to show that their anticipated tax refunds are already included in projected disposable income, and the plan in each case cannot be confirmed.

The court will enter an order denying confirmation in both cases and providing debtors 28 days to file an amended plan.

###

cc: Rex Daines
 Paul Garrick